# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48074-3-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| MOUNTAIN VIEW PLACE LLC, a Washington Limited Liability Company, | |
| Appellant, | |
| RELIASTAR LIFE INSURANCE COMPANY, a Minnesota Corporation; and CLARK COUNTY, | |
| Defendants. | |

BJORGEN, C.J. — Mountain View Place (MVP) appeals the trial court's order authorizing the Washington State Department of Transportation (WSDOT) to condemn MVP's limited access rights on two of its properties. WSDOT deemed the condemnation necessary for the operation of Interstate 205 (I-205) in Vancouver.

MVP argues that WSDOT acted arbitrarily and capriciously because it designated the class of allowable access on one of the properties contrary to WAC 468-58-100, which requires

that a designation be "commensurate with . . . potential land use" and "based on appraisals" that consider the relevant factors. MVP also requests attorney fees on appeal.

We hold that MVP fails to show that WSDOT arbitrarily and capriciously designated its access in a manner that was not commensurate with the potential land use of its properties. We do not reach whether WSDOT was required to submit appraisals to support the designation, because MVP did not raise this issue in the trial court and thus waived the argument under RAP 2.5(a). Finally, because MVP does not show it is entitled to attorney fees under applicable law, we decline to award them.

Accordingly, we affirm.

FACTS

In 2014, WSDOT contractors started work on a highway project, which included building a new northbound off-ramp and southbound on-ramp connecting I-205 with Northeast (NE) 18th Street in Vancouver. I-205 is a "limited access highway,"[1] which the legislature defines as

> a highway or street especially designed or designated for through traffic, and over, from, or to which owners or occupants of abutting land, or other persons, have no right or easement, or only a limited right or easement of access, light, air, or view by reason of the fact that their property abuts upon such limited access facility.

RCW 47.52.010.

WSDOT held a hearing in 2012 and adopted a limited access plan, which included a portion of NE 18th Street connected to I-205's new off-ramp as part of the limited access highway. Consistently with its regulations, WSDOT designated the first 130 feet of NE 18th Street from I-205's new off-ramp a "fully controlled limited access highway," and from 130 to

---

[1] Chapter 47.52 RCW uses the term "limited access facility," but WSDOT's regulations use the term "limited access highway." WAC 468-58-010. For ease of reference throughout this opinion, we use limited access highway.

300 feet from the off-ramp as a "modified controlled limited access highway." Report of Proceedings (Sept. 18, 2015) at 6; WAC 468-58-010, -080(1)(d). Pertinent here, a "modified controlled limited access highway"

> is a highway where the right of owner or occupants of abutting land or other persons to access, light, air, or view in connection with the highway is controlled to give preference to through traffic to such a degree that most approaches, including commercial approaches, existing and in use at the time of the establishment, may be allowed.

WAC 468-58-010(3). An "approach" refers to an access point between a highway and a parcel of real property abutting said highway.

MVP owns two parcels of property, Parcel 4-08353 and Parcel 4-08366, that abut the portion of NE 18th Street designated a modified controlled limited access highway. MVP also owns three undeveloped parcels located next to Parcel 4-08353 and Parcel 4-08366, but which do not abut NE 18th Street. In accordance with its limited access plan, WSDOT adopted a right-of-way plan that illustrated the limited access rights it needed to acquire from Parcel 4-08353 and Parcel 4-08366, which included MVP's "rights of ingress and egress (including all existing, future or potential easements of access, light, view, and air) to, from, and between I-205" on these two parcels. Clerk's Papers (CP) at 33-34; *see* RCW 47.52.050(1).

WSDOT did not pursue all of MVP's limited access rights on Parcel 4-08353. Instead, because Parcel 4-08353 was improved with a multi-family apartment complex and its sole access was a driveway connected to NE 18th Street, WSDOT's plan classified Parcel 4-08353's access a "Type C" approach.[2] CP at 38. A "Type C approach is an off and on approach

---

[2] Before choosing which approach to classify the access, WSDOT attempted to negotiate with MVP. Those discussions were not successful.

in legal manner, for special purpose and width to be agreed upon." WAC 468-58-080(3)(b)(iii).

WSDOT specified that

> This [Type C] approach is for use as a multi-family apartment complex at [Parcel 4-08353] and shall not exceed 30 feet in width. If the property use changes, the approach will not be perpetuated without the State's prior written approval, which approval may be granted after determination as to the impacts to the safety, operations or maintenance of said highway.

CP at 5.

Pursuant to the right-of-way plan, WSDOT petitioned the trial court to condemn MVP's limited access rights to Parcel 4-08353 and Parcel 4-08366, with the exception of the Type C approach to Parcel 4-08353. This included a condemnation of MVP's right to less restrictive approaches, including a Type E approach, which permits the use of an access for commercial purposes. WAC 468-58-080(3)(b)(v). In its condemnation petition, WSDOT stated the acquisition of these limited access rights was "necessary for the construction, maintenance, and operation of [I-205], which is a public use." CP at 3.

MVP opposed the condemnation action, arguing that WSDOT acted arbitrarily and capriciously by failing to follow WAC 468-58-100(1) in designating Parcel 4-08353's access a Type C approach. Specifically, MVP contended that the Type C approach was not "commensurate with . . . [the] potential land use," of its five contiguous parcels. WAC 468-58-100(1)(a). MVP argued that Vancouver's comprehensive plan and zoning designations on its five contiguous parcels would permit future commercial development, which would require a less restrictive approach, such as Type E, accommodating future commercial use.

The trial court found that WSDOT's condemnation of MVP's limited access rights was "necessary for the construction, maintenance, and operation" of I-205, CP at 100, and that WSDOT's actions were not arbitrary or capricious.

MVP appeals.

ANALYSIS

I. STANDARD OF REVIEW

Mountain View appeals the trial court's order adjudicating public use and necessity entered September 18, 2015. That order was the result of an original action in the trial court. It was not the result of judicial review of the agency's action under the Administrative Procedure Act, chapter 34.05 RCW. Therefore, we review on appeal the validity of the trial court's order.

In order for a proposed condemnation to be lawful, the condemning authority must prove that (1) the use is public, (2) the public interest requires the use, and (3) the property appropriated is necessary for that purpose. *HTK Mgmt., L.L.C. v. Seattle Popular Monorail Auth.*, 155 Wn.2d 612, 629, 121 P.3d 1166 (2005). Only the final prong is at issue here.

"Whether condemnation is necessary is largely a question for the legislative body of the jurisdiction or government agency seeking condemnation." *Cent. Puget Sound Reg'l Transit Auth. v. Miller*, 156 Wn.2d 403, 411, 128 P.3d 588 (2006). The legislature has empowered WSDOT to make the determination regarding which limited access rights are necessary to acquire in order to maintain a limited access highway. Chapter 47.01 RCW; RCW 47.12.010; RCW 47.52.050(1). WSDOT's determination of necessity is conclusive upon a court "'in the absence of proof of actual fraud or such arbitrary and capricious conduct as would constitute constructive fraud.'" *Miller*, 156 Wn.2d at 411 (quoting *City of Des Moines v. Hemenway*, 73 Wn.2d 130, 139, 437 P.2d 171 (1968)); *see also* RCW 47.12.010.

MVP argues that WSDOT's determination of necessity was arbitrary and capricious. Thus, under *Miller* and RCW 47.12.010, we review the trial court's order by determining whether WSDOT's necessity determination was arbitrary and capricious. If it was not, then that

determination is conclusive upon us and the trial court under *Miller* and RCW 47.12.010, and the trial court's order must be affirmed.

The arbitrary and capricious standard requires a showing that WSDOT acted willfully and unreasonably, without consideration, and in disregard of facts and circumstances. *Freeman v. State*, 178 Wn.2d 387, 405, 309 P.3d 437 (2013). The burden of proof is on the party who asserts that a public authority has acted arbitrarily and capriciously. *Farrell v. City of Seattle*, 75 Wn.2d 540, 543, 452 P.2d 965 (1969).

"Courts do not disturb a determination of necessity if it was reached 'honestly, fairly, and upon due consideration' of the facts and circumstances*." Pub. Util. Dist. No. 2 of Grant County v. N. Am. Foreign Trade Zone Indus., LLC*, 159 Wn.2d 555, 576, 151 P.3d 176 (2007) (quoting *City of Tacoma v. Welcker*, 65 Wn.2d 677, 684, 399 P.2d 330 (1965)). Even if we believe the decision may be unwise, it is still a decision for the legislative body to make. *Miller*, 156 Wn.2d at 418. "Even where the decision was motivated in part by improper considerations, a reviewing court will not vacate if 'the proposed condemnation demonstrates a genuine need and . . . the condemnor in fact intends to use the property for the avowed purpose.'" *Pub. Util. Dist. No. 2 of Grant County*, 159 Wn.2d at 576 (alteration in original) (quoting *Miller*, 156 Wn.2d at 418).

## II. ARBITRARY AND CAPRICIOUS

MVP argues that WSDOT acted arbitrarily and capriciously by designating Parcel 4-08353's access a Type C approach because WAC 468-58-100 requires the approach be "commensurate with . . . potential land use" and be "based on appraisals" which consider a list of factors. We conclude that MVP fails to show that WSDOT arbitrarily and capriciously designated MVP's access in a manner that was not commensurate with the potential land use of its properties. We decline to reach whether the lack of appraisals would rise to the level of

arbitrary or capricious conduct because MVP did not raise the issue to the trial court and thus waived it under RAP 2.5. Accordingly, these claims fail.

1.      Legal Principles

WSDOT possesses agency discretion to classify accesses to "modified controlled limited access" highways as Type A, B, C, D, E, or F approaches. WAC 468-58-010(3); WAC 468-58-080(3)(b)(i)–(vi), (1)(d). As relevant to this appeal, the Type C and Type E approaches are defined in WAC 468-58-080(3)(b) as

> (iii) Type C approach. Type C approach is an off and on approach in legal manner, for special purpose and width to be agreed upon. It may be specified at a point satisfactory to the state at or between designated highway stations.
> . . . .
> (v) Type E approach is a separated off and on approach in a legal manner, with each opening not exceeding thirty feet in width, for use necessary to the normal operations of a commercial establishment. It may be specified at a point satisfactory to the state at or between designated highway stations.

WAC 468-58-100(1) provides that in classifying an access,

> (a) The type of approach for each parcel *shall be commensurate with the present and potential land use* and *be based on appraisals* which consider the following:
>
> | | |
> |---|---|
> | (i) | Local comprehensive plans, zoning and land use ordinances. |
> | (ii) | Property covenants and/or agreements. |
> | (iii) | City or county ordinances. |
> | (iv) | The highest and best use of the property. |
> | (v) | Highest use and best use of adjoining lands. |
> | (vi) | Change in use by merger of adjoining ownerships. |
> | (vii) | All other factors bearing upon proper land use of the parcel. |

WAC 468-58-100(1) (emphasis added). After its initial designation, WSDOT is free to modify the "type, size and location of the approach." WAC 468-58-100(1)(c).

2.      Commensurate with Potential Land Use

MVP argues that WSDOT acted arbitrarily and capriciously because a Type C approach to its access is not "commensurate with . . . potential land use." WAC 468-58-100(1)(a). We disagree that WSDOT's actions rise to the level of arbitrary and capricious conduct.

In support of its argument, MVP relies on evidence from Vancouver's comprehensive plan and zoning designations. WAC 468-58-100(1)(a)(i). The comprehensive plan designates each of MVP's five parcels as Urban Higher Density (UH), and the corresponding zoning (R-18, R-22) permits multifamily dwellings and mixed use. The zoning designations permit concentrated residential communities and/or commercial development, such as food establishments, retail, and business offices. Thus, MVP contends that the Type C approach was not commensurate with possible future commercial development on its five contiguous parcels.

However, the comprehensive plan and zoning designations do not establish that WSDOT acted arbitrarily and capriciously. It was not until after attempted negotiations with MVP that WSDOT designated the access as a Type C approach to accommodate the current multi-family apartment complex on Parcel 4-08353. WSDOT even considered designating it a Type E approach as MVP wanted, but found that designation inconsistent with the driveway's construction, which did not have a "separate on and off approach." CP at 98. Thus, WSDOT cannot be said to have acted willfully and unreasonably, without consideration and in disregard of the facts and circumstances.

Further, the fact that a Type E approach may have been more appropriate for future commercial activity on MVP's parcels, as MVP argues, does not show that WSDOT acted willfully and unreasonably, without consideration of the facts and circumstances. *Freeman*, 178 Wn.2d at 405. WSDOT is not bound to designate an access that accommodates every possible

use contemplated by a comprehensive plan or permitted by the zoning designations. Whether or not a Type E approach would have better accommodated possible future uses, WSDOT did not act unreasonably and did consider the facts and circumstances. Its choice was not arbitrary and capricious under the standards noted above. Accordingly, this claim fails.

3.      Appraisals

Next, MVP argues that WSDOT acted arbitrarily and capriciously because it failed to show that the Type C approach was "based on appraisals" which considered the relevant factors in WAC 468-58-100(1)(a). However, we do not reach this issue because MVP failed to raise this particular contention at the trial court.

Generally, we will not entertain issues raised for the first time on appeal. *In re Rapid Settlements, Ltd. v. Symetra Life Ins. Co.*, 166 Wn. App. 683, 695, 271 P.3d 925 (2012) (citing RAP 2.5(a)). "The reason for this rule is to afford the trial court an opportunity to correct errors, thereby avoiding unnecessary appeals and retrials." *Rapid Settlements*, 166 Wn. App. at 695.

MVP did not argue in the trial court, as it now does on appeal, that WSDOT was required to submit formal appraisals analyzing the WAC 468-58-100(1)(a) factors. Although it is arguable whether WSDOT is required to submit appraisals in support of a proposed approach type, the trial court did not have a chance to pass on that question. If MVP had raised this issue in the trial court, it would have given WSDOT a chance to potentially provide evidence of appraisals to the trial court. Accordingly, we do not reach the merits of this argument and hold it is waived under RAP 2.5(a).

4.    Parcel 4-08366

MVP also argues that the acquisition of its limited access rights on Parcel 4-08366 was arbitrary and capricious because the entire parcel falls outside of the 300-feet limitation permitted for a controlled highway. However, such a distance limitation does not exist; WSDOT's regulations permit them to establish fully controlled highways and partially controlled highways "for a *minimum distance* of three hundred feet." *See* WAC 468-58-080(1)(c), (d), (2)(b), (c) (emphasis added). Thus, to the extent that the controlled access highway exceeds 300 feet, WSDOT acted within its regulatory authority.

Furthermore, contrary to MVP's position, the trial court record does not establish that Parcel 4-08366 falls outside WSDOT's limited access right-of-way plan. Instead, the record supports that the majority of Parcel 4-08366 abutted the portion of NE 18th Street classified as a modified controlled access highway. MVP also suggests that WSDOT impermissibly condemned the limited access rights of the small southern portion of Parcel 4-08366. This contention fails, however, as WSDOT specifically acquired only the access rights to the portion of the parcel that falls within the hash marks on its limited access plan, which does not include the small southern portion.

Accordingly, WSDOT's acquisition of Parcel 4-08366's limited access rights was not arbitrary or capricious.

### III. ATTORNEY FEES

MVP argues that it is entitled to an award of attorney fees and costs on appeal under RAP 18.1 and 42 U.S.C. § 1988 because WSDOT violated its federal constitutional rights to just

compensation for property taken and to due process. U.S. CONST. amend. V, XIV. Under RAP 18.1(a), we may award attorney fees on appeal if applicable law authorizes them. However, 42 U.S.C § 1988(b) only authorizes an award of attorney fees in actions under 42 U.S.C § 1983 or other listed federal statutes. MVP did not bring a claim under 42 U.S.C § 1983 or any of the enumerated statutes. Therefore, it is not entitled to attorney fees pursuant to 42 U.S.C § 1988.

MVP cites to *Mission Springs, Inc. v. City of Spokane*, 134 Wn.2d 947, 954 P.2d 250 (1998) and *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 829 P.2d 746 (1992) to support its proposition that its entitled to an award of attorney fees under 42 U.S.C § 1988. In both of these cases, though, the court awarded attorney fees under 42 U.S.C § 1988 because the plaintiff had prevailed on a separately alleged claim under 42 U.S.C § 1983. *Mission Springs*, 134 Wn.2d at 957, 962, 972; *Lutheran Day Care*, 119 Wn.2d at 97, 128-29. MVP cannot be awarded for attorney fees under 42 U.S.C § 1988 for a 42 U.S.C § 1983 claim it never alleged.

Accordingly, we deny the request for attorney fees.

CONCLUSION

We hold MVP fails to show that WSDOT arbitrarily and capriciously designated its access in a manner that was not commensurate with the potential land use of its properties. We do not reach whether WSDOT was required to submit appraisals to support the designation, because MVP did not raise this issue below and thus waived the argument under RAP 2.5(a). Finally, because MVP does not show it is entitled to attorney fees under applicable law, an award of attorney fees is not appropriate.

No. 48074-3-II

We affirm the trial court's condemnation order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, C.J.

We concur:

Johanson, J.

Maxa, J.

12